UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| WESLEY COLEMAN, | ) | |
|---|---|---|
| | ) | Case No. 3:22-cv-387 |
| *Plaintiff*, | ) | |
| | ) | Judge Travis R. McDonough |
| v. | ) | |
| | ) | Magistrate Judge Debra C. Poplin |
| MIKE PARRIS, FNU OLROYED, FNU JONES, AND SGT. JOHN EVANS | ) ) | |
| | ) | |
| *Defendants*. | ) | |

# MEMORANDUM OPINION

Plaintiff, a Tennessee Department of Correction ("TDOC") prisoner housed in the Morgan County Correctional Complex ("MCCX"), has filed a pro se complaint for violation of 42 U.S.C. § 1983 (Doc. 1), that the United States District Court for the Middle District of Tennessee transferred to this Court (Doc. 3), a filing that the Court liberally construes to seek an extension of time to file the required documents to proceed *in forma pauperis* (Doc. 8), and a motion for leave to proceed *in forma pauperis* (Doc. 9). For the reasons set forth below, Plaintiff's motions regarding leave to proceed *in forma pauperis* (Docs. 8, 9) will be **GRANTED**, and this action will be **DISMISSED** because the complaint fails to state a claim upon which relief may be granted under § 1983.

## I.    FILING FEE

First, the filing that the Court liberally construes as a motion for extension of time to file the required *in forma pauperis* documents (Doc. 8) is **GRANTED** to the extent that the Court considers Plaintiff's motion for leave to proceed *in forma pauperis* (Doc. 9) timely filed.  Also,

as it appears from Plaintiff's motion for leave to proceed *in forma pauperis* that he is unable to pay the filing fee, this motion is **GRANTED**. (*See id.*)

Plaintiff is **ASSESSED** the civil filing fee of $350.00. The custodian of Plaintiff's inmate trust account is **DIRECTED** to submit to the Clerk, U.S. District Court, 800 Market Street, Suite 130, Knoxville, Tennessee 37902, as an initial partial payment, whichever is the greater of: (a) twenty percent (20%) of the average monthly deposits to his inmate trust account; or (b) twenty percent (20%) of the average monthly balance in his inmate trust account for the six months before the filing of the complaint. 28 U.S.C. § 1915(b)(1)(A), (B). Thereafter, the custodian of Plaintiff's inmate trust account shall submit twenty percent (20%) of his preceding monthly income (or income credited to his trust account for the preceding month), but only when such monthly income exceeds ten dollars ($10.00), until the full filing fee of three hundred fifty dollars ($350.00) as authorized under 28 U.S.C. § 1914(a) has been paid to the Clerk. 28 U.S.C. § 1915(b)(2).

To ensure compliance with this procedure, the Clerk is **DIRECTED** to provide a copy of this memorandum opinion to both the custodian of inmate accounts at Plaintiff's current institution and the Court's financial deputy. This order shall be placed in Plaintiff's prison file and follow him if he is transferred to another correctional institution.

## II. COMPLAINT SCREENING

### A. Standard

Under the Prison Litigation Reform Act ("PLRA"), district courts must screen prisoner complaints and shall, at any time, *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. 28 U.S.C. §§ 1915(e)(2)(B), 1915(A); *see e.g.*, *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The

2
Case 3:22-cv-00387-TRM-DCP   Document 10   Filed 02/10/23   Page 2 of 14   PageID #: 22

dismissal standard that the Supreme Court set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure to state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (citations omitted). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Formulaic and conclusory recitations of the elements of a claim do not state a plausible claim for relief. *Id.* at 681. Likewise, an allegation that does not raise a plaintiff's right to relief "above the speculative level" fails to state a plausible claim. *Twombly*, 550 U.S. at 555. However, courts liberally construe pro se pleadings and hold them to a less stringent standard than lawyer-drafted pleadings. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

A claim for violation of 42 U.S.C. § 1983 requires a plaintiff to establish that a person acting under color of state law deprived him a federal right. 42 U.S.C. § 1983.

B.    **Allegations**

Plaintiff's complaint is thirty-five pages long. (Doc. 1.) In his complaint, Plaintiff first names Warden Mike Parris, Dr. Olroyed,[1] Assistant Warden Jones, and Sgt. John Evans as Defendants. (*Id.* at 2–3.) But the complaint also includes two lists naming MCCX jail officials and medical providers, one of which Plaintiff labels "Defend[a]nts of victims." (*Id.* at 5, 9.) Plaintiff's complaint sets forth his substantive allegations in a twenty-five-page, single-spaced, handwritten narrative of events during his confinement. (*Id.* at 4–29.)

---

[1] Plaintiff spells this Defendant's name differently in the body of his complaint (*see, e.g.,* Doc. 1, at 25 (allegations regarding "Dr. Olroyd")), but the Court will spell the name as Plaintiff first does in the complaint. (*Id.* at 2.)

The Court has closely examined Plaintiff's complaint and determined that the vast majority of the allegations therein relate to: (1) Plaintiff hearing, seeing, or thinking he sees or hears nurses involved in sexual activities, sometimes with other inmates and/or prison employees; and (2) the psychic abilities of correctional officers, prison employees, or other individuals. (*Id.* at 9–29.) Additionally, many of the allegations in Plaintiff's complaint are nonsensical or incomplete. (*Id.* at 4–29.) Due to the nature of many of Plaintiff's allegations in his complaint and the fact that Plaintiff does not connect himself or any named MCCX official to many of those allegations, the Court will not go into great detail in summarizing Plaintiff's complaint. However, the Court will endeavor to present a condensed but accurate and thorough summary of Plaintiff's complaint.

Plaintiff first alleges that on January 20, 2022, Dr. Shepherd "denied [him] x-ray medial assist[ance]." (*Id.* at 4.) Plaintiff then lists a number of MCCX jail officials and medical providers, many of whom he describes as "psychics." (*Id.* at 5.) Plaintiff also asks for a quick trial and for rape kits to be offered all MCCX females before listing alleged violations of TDOC policy. (*Id.*)

Plaintiff asserts that "[he is] not fil[]ing a lawsuit to lose and remain in Morgan County Max mental health," he has never been written up more than once at any other prison, and there is something wrong at MCCX, before setting forth various facts about himself and his family. (*Id.*) Plaintiff also lists various conclusory allegations about his incarceration, specifically:

1. An allegation about a lawyer note to a file;

2. Allegations that he gets "No rec. No reviews. No release from a 6 month program," which he calls "cruel and unusual punishment";

3. "(Sexual assaults, rape, sexual abuse.) On camera jacking inmates off, having sex";

4. An "illegal search and se[iz]ure" in which unnamed prison officials said "they received phone calls that [Plaintiff] had drugs";

5. Wrongful convictions in which Plaintiff was charged for things he did not do and for which there was no proof;

6. Tampering with incoming and outgoing mail;

7. Racial profiling based on unnamed people "calling [Plaintiff] out of respect for color" and punishing him by placing a shield on his door;

8. Unspecified prison officials did not reply to a request from Plaintiff "timely or at all";

9. A failure to follow Warden protocols;

10. "Avoiding grievances and letters";

11. Therapists, nurses, and correctional officers who are psychics and "br[eak] the law by using the ability to harm people innocently," which Plaintiff also categorizes as "cruel and unusual punishment";

12. "Blackmailing";

13. Saying Plaintiff will be punished for things others have done;

14. Denying Plaintiff medical examinations for prescription of medications or other issues;

15. Stealing of property; and

16. "(Mandatory Segregation) Assignment to maximum security housing of those inmates committed to the Department under the sentence of death":

(*Id.* at 7.) Plaintiff also questions why he is still on maximum security in a mental health pod and states that he is "not on any mental health meds" before listing two Tennessee statutes that relate to the TDOC's powers and duties and the TDOC commissioners' duties. (*Id.*) Plaintiff additionally writes the term "Prison Rape Elimination Act." (*Id.*)

Plaintiff then inserts a handwritten form in which he sets forth some of his personal information before including another list of MCCX jail officials and medical providers labeled

"Defend[a]nts of victims," in which he calls many of the listed individuals psychics. (*Id.* at 8, 9.) Plaintiff additionally states "they are abusers and sex offende[r]s" who engage in sexual activities, including rape and sexual assault. (*Id.* at 9.) Plaintiff also claims that "they monitor" everything he does and assault him. (*Id.*) Next, Plaintiff claims that, on two separate days, he heard a therapist named Penny and others in the hall "[h]av[]ing sex loudly." (*Id.* at 10.)

Plaintiff indicates that he has "No Justice, Freedom[,] or Peace[,]" and there is a tree in Georgia that Plaintiff "need[s] [to] be torn down." (*Id.* at 11.) Also, on January 10, 2022, an officer asked an inmate who was a junkie and "sick as [a] boy" if he wanted to "take all this blood pressure medication." (*Id.*)

Then, on January 20, 2022, Plaintiff signed up for sick call but was seen only for his blood pressure even though his right-hand knuckle was broken, which appears to relate back to Plaintiff's earlier allegation that Dr. Shepherd "denied [him] x-ray medial assist[ance]." (*Id.* at 4, 11.) Plaintiff also claims that the doctor visited with three "cells [who were] not listed . . . to avoid [him] because they say [he is] being sexual when [he is] not and they are, [and] they do not want to help [him] but hurt [him]." (*Id.* at 11.) Plaintiff is "really tired of the psychic readings from them as sex attracted voic[]ing they do by speaking in a distance to [him]." (*Id.*)

Plaintiff further claims that on January 21, 2022, a nurse told Plaintiff that he will not be released until November. (*Id.*) But even though Dr. Olroyed told Plaintiff that his level of care will be "looked up," it is never lowered. (*Id.*) Also on January 21, 2022, an officer said "Do I smell vodka[?]" (*Id.*)

Plaintiff indicates that he has been "Tor[t]ured[] [si]nce 2018 and before" and sets forth allegations regarding alleged psychic and sexual events, as well as phone numbers and a maintenance man in MCCX. (*Id.* at 12–14.) Plaintiff then sets forth allegations about seeing

multiple vehicles hitting the gas and the pipes and concludes they must be psychic, allegations regarding alleged comments from a nurse that he felt sounded sexual and/or violent, and allegations that a nurse said Plaintiff must stay in this level of care even though Plaintiff denies having any mental health issues. (*Id.* at 14.)

Next, Plaintiff states that on March 4, 2022, Corporal Lalock, who is one of the MCCX officials Plaintiff previously categorized as a psychic and a "Defend[]nt[] of victims," "approach[ed] [Plaintiff's] door and punch[ed] [Plaintiff] w[h]ere [his] face was at by the window" after Plaintiff made a comment to him. (*Id.* at 15.) On the same day, "Thomas Shirly" threw five milk cartons at Plaintiff but was not written up or otherwise punished. (*Id.*) Plaintiff also makes indecipherable allegations regarding "Timithy Kelly" being suicidal and a nurse saying something "just to hurt [Plaintiff]." (*Id.*)

Plaintiff then makes statements regarding the number 777, aircrafts, and more sexual activity from inmates and nurses. (*Id.* at 16.)

Plaintiff also states that on March 3, 2022, a nurse stayed behind his back while he was defecating and then made comments to him that assaulted him without speaking to him before running off from his door, seemingly to do sexual and other activities with a white man. (*Id.* at 17.) He then makes more indecipherable allegations about other inmates, racism, psychics, sexual activities, voodoo, his stress from learning he can get brain cancer from stress, and commissary. (*Id.* at 17–20.)

Plaintiff further claims that on March 22, 2022, Nurse Ashley "picked an argument with [him]," stated that she did not turn in his sick-call form to see the doctor, stated that he would not get any medication from her, and took away Plaintiff's medicine. (*Id.* at 20.) Plaintiff additionally states that this nurse stated that she would not lose her job over him and that she was

"going to get pregnant by a c/o or inmate." (*Id.*) Plaintiff then states that "because I'm broke I get no justice no peace" and that, just as he was envisioning his type of woman, he overheard psychic MCCX female employees. (*Id.* at 21.)

Next, Plaintiff describes events that he believes indicate that "they [are] on this slick sexual shit again" before alleging that on March 23, 2022, an unspecified doctor visited a pod and avoided Plaintiff's medical and mental health review. (*Id.*) Plaintiff then sets forth more allegations regarding nurses engaging in sexual activity with other inmates before stating that a nurse "must [have] be[e]n in that pod on camera she sex tracking and sexuall[y] assaulting me telling people my name and harrasin[g] me." (*Id.* at 21–22.)

Plaintiff makes more allegations regarding MCCX officials or inmates engaging in sexual acts and his food package orders. (*Id.* at 22–23.) Plaintiff also asserts that Nurse Ashley called another inmate a Mexican and nurses engaged in more psychic and sexual activities. (*Id.* at 24.)

Plaintiff then sets forth the conclusory statement "wrongful punishment of Black American" before stating that on March 26, 2022, Defendant Dr. Olroyed failed to respond to his request forms and sick call forms and visited his pod but initially did not stop at his door. (*Id.* at 25.) But Plaintiff then states that Dr. Olroyed eventually did come to his cell on this day, at which point Plaintiff told this Defendant that he was thirty-four years old, and that "'[he] was told to get [her] to drop [his] level of care," as he is not on mental health medications. (*Id.*) But Dr. Olroyed became hostile, told Plaintiff he was written up a year ago, and wrote in Plaintiff's chart that she was not going to lower his levels of care. (*Id.*) Plaintiff then brought up the alleged sexual acts of MCCX officials, at which point Dr. Olroyed told Plaintiff not to worry about what other people do and to worry about himself, which Plaintiff categorizes as an assault and this Defendant "lash[ing] out at [him]." (*Id.*)

Plaintiff additionally complains of more sexual activity between nurses and inmates on April 1 and 11, 2022, before setting forth allegations regarding his difficulties with being single, dealing with rehabilitation and psychics, writing music, and his religion. (*Id.* at 25–28.) Plaintiff then alleges that he has been "[d]enied transfer[] repl[ies]" and that unspecified individuals have "abused" him by telling new employees that he is the worst member of the pod even though he has not had a write up in fourteen months. (*Id.* at 28.) Lastly, Plaintiff states that unnamed individuals have denied him an x-ray and surgery on a hand that is still broken and notes "3 fill ins." (*Id.* at 29.)

As relief, Plaintiff seeks monetary damages. (*Id.*)

### C. Analysis

Even if the Court liberally construes Plaintiff's complaint to name all of the MCCX prison officials and medical providers Plaintiff includes in the lists of individuals in his complaint as Defendants, Plaintiff's complaint fails to state a claim upon which relief may be granted under § 1983.

#### i. *Delusional Allegations*

First, Plaintiff's complaint contains many allegations regarding psychics and nearly constant sexual activity around him at MCCX that are delusional and rise to the level of "irrational" or "wholly incredible." *Denton v. Hernandez*, 504 U.S. 25, 33 (1992) ("[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible . . . ."). As such, these allegations fail to state a claim upon which relief may be granted under § 1983 as to any Defendant. *See id.*

#### ii. *Conclusory Allegations*

Plaintiff also does not connect many of his allegations to any MCCX official or to himself in a manner that would allow the Court to plausibly infer any violation of his

9
Case 3:22-cv-00387-TRM-DCP   Document 10   Filed 02/10/23   Page 9 of 14   PageID #: 29

constitutional rights. *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (providing that "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights" to state a claim upon which relief may be granted under § 1983). As such, these allegations also fail to state a claim upon which relief may be granted under § 1983.

### iii. Allegations on Behalf of Other Prisoners

As set forth above, many of Plaintiff's allegations do not include facts suggesting that he was personally involved in the incidents he describes. And to the extent Plaintiff seeks relief on behalf of other prisoners based on these allegations, he lacks standing to do so. *Newsom v. Norris*, 888 F.2d 371, 381 (6th Cir. 1989) (holding that a "a prisoner who initiates a civil action challenging certain conditions at a prison facility in his individual capacity is limited to asserting alleged violations of his own constitutional rights and . . . lacks standing to assert the constitutional rights of other prisoners").

### iv. Punch Allegation

As set forth above, Plaintiff alleges that on March 4, 2022, Corporal Lalock, whom Plaintiff calls a psychic and a "Defend[]nt[] of victims" earlier in his complaint, "approach[ed] [Plaintiff's] door and punch[ed] [Plaintiff] w[h]ere [his] face was at by the window" after Plaintiff made a comment to him. (Doc. 1, at 15.) Even liberally construing these allegations in Plaintiff's favor, it is apparent that Plaintiff alleges that while he behind his cell door, Corporal Lalock punched the cell door in the place where Plaintiff had his head, as (1) Plaintiff specifies that Corporal Lalock approached his door; (2) Plaintiff states that Corporal Lalock's punch landed "where [Plainitff's] face was at by the window," rather than on Plaintiff's face;, and (3) Plaintiff does not allege any pain or injury from this punch. (*See id.*)

As such, to the extent that Plaintiff intended to state a claim for excessive force based on these allegations, he has not done so, as these allegations do not allow the Court to plausibly

infer that Corporal Lalock used any force against Plaintiff for the purpose of causing harm. *See Hudson v. McMillan*, 503 U.S. 1, 6 (1992) (cleaned up) (holding an excessive-force claim "turns on whether the force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm"). In other words, Plaintiff has not "nudged [this excessive-force claim] across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

      ***v.    Deliberate Indifference to Serious Medical Needs***

As set forth above, Plaintiff also alleges that: (1) Dr. Shepherd denied him an x-ray even though "[his] right hand knuckle [was] broke[n]"; (2) Nurse Ashley stated that she did not turn in Plaintiff's sick-call form to see the doctor, stated that Plaintiff would not get any medication from her, and took Plaintiff's medicine; and (3) Dr. Olroyed declined to lower Plaintiff's care levels despite Plaintiff's request that she do so. (Doc. 1, at 4, 11, 20, 25.) However, none of these allegations allow the Court to plausibly infer a violation of Plaintiff's constitutional rights.

A prison authority's deliberate indifference to an inmate's serious medical need violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Prison medical personnel or officials may be deliberately indifferent to a prisoner's serious medical needs "in their response to a prisoner's needs" or by "intentionally interfer[ing] with treatment once prescribed." *Id.* at 104–05. A medical provider violates a prisoner's Eighth Amendment right through actions that are "sufficiently harmful to evidence deliberate indifference to [the prisoner's] serious medical needs." *Id.* at 106. Deliberate indifference is equivalent to "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 839–40 (1994). Under this standard, a state actor is not liable under § 1983 unless he (1) knew that the inmate faced a substantial risk of serious harm; and (2) disregarded that risk by failing to take reasonable measures to abate it. *Id.* at 847.

Allegations that a prisoner did not receive the medical treatment he wanted or received a misdiagnosis do not state a claim for violation of the Eighth Amendment. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017) (citations omitted) ("A patient's disagreement with his physicians over the proper course of treatment alleges, at most, a medical-malpractice claim, which is not cognizable under § 1983."); *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997) ("Misdiagnoses, negligence, and malpractice are not [] tantamount to deliberate indifference."). Thus, where a prisoner received medical care, his disagreement with the adequacy of that care generally does not rise to the level of a constitutional violation. *See Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1996) (citations omitted) (noting that "federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law"). But medical care that is "so woefully inadequate as to amount to no treatment at all" violates the Eighth Amendment. *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2001) (quoting *Westlake*, 537 F.2d at 860 n.5).

First, Plaintiff did not name Dr. Shepherd as a Defendant or list this Defendant anywhere in his complaint except in his allegation that Dr. Shepard denied him an x-ray. (*See* Doc. 1.) But even if the Court assumes that Plaintiff intended to sue Dr. Shepherd, Plaintiff has not set forth any facts from which the Court can find that Dr. Shepherd's failure to give Plaintiff an x-ray amounts to deliberate indifference to Plaintiff's serious medical need. While Plaintiff alleges that a knuckle on his right hand is broken, he does not state why he believes that this is the case, nor does he set forth facts from which the Court can plausibly infer that Dr. Shepherd's decision not to x-ray this knuckle or Plaintiff's whole hand amounts to deliberate disregard of a risk of harm that Plaintiff faces due to his broken knuckle, rather than a medical judgment that an x-ray is not necessary.

Likewise, Plaintiff provides no facts from which the Court can plausibly infer that his conclusory allegations that Nurse Ashley told him that she did not turn in a sick call form for him, told him that she would not give him medicine, and took his medicine from him on one occasion amounted to deliberate indifference to Plaintiff's serious medical need, rather than a medical judgment that Plaintiff did not need to see the doctor or need his medication at that time. As such, these allegations likewise do not allow the Court to plausibly infer a violation of Plaintiff's constitutional rights.

Plaintiff's allegations regarding Dr. Olroyed also do not allow the Court to plausibly infer that this Defendant violated his constitutional rights by declining to lower Plaintiff's care levels. To the contrary, it appears from Plaintiff's allegations that this Defendant is seeking to ensure that Plaintiff receives the care he needs.

### vi. *Other Remaining Allegations*

The Court finds that any remaining allegations that the Court has not addressed through its analysis above likewise fail to state a claim upon which relief may be granted under § 1983.

### III. CONCLUSION

For the reasons set forth above:

1. Plaintiff's motion for leave to proceed *in forma pauperis* (Doc. 9) is **GRANTED**;

2. Plaintiff is **ASSESSED** the civil-filing fee of $350.00;

3. The custodian of Plaintiff's inmate trust account is **DIRECTED** to submit the filing fee to the Clerk in the manner set forth above;

4. The Clerk is **DIRECTED** to provide a copy of this memorandum opinion to the custodian of inmate accounts at the institution where Plaintiff is now confined and the Court's financial deputy;

5. Even liberally construing the complaint in favor of Plaintiff, it fails to state a claim upon which relief may be granted under § 1983;

6. Accordingly, this action will be **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; and

7. The Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. *See* Fed. R. App. P. 24.

**AN APPROPRIATE JUDGMENT WILL ENTER**.

**SO ORDERED.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**